IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DIVISION ACCESS CONTROL,
INC.,

    Plaintiff,

v.                                       Civil Action No. 3:06cv414

JOHN WADE LANDRUM,

    Defendant.

**MEMORANDUM OPINION**

This case is before the Court on the defendant's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA; MOTION TO DISMISS COUNT II OF THE FIRST AMENDED COMPLAINT FOR FAILURE TO ALLEGE CIVIL CONSPIRACY WITH PARTICULARITY AND MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT (Docket Nos. 4, 5, 6, 7). Division Access Control, Inc. ("DAC") filed this action, alleging that Landrum breached an employment contract and his fiduciary duty as an officer of DAC, and that he committed tortious interference with contract by assisting a competitor to circumvent DAC's contract for distribution of the products of RIELDA, an Italian production company. DAC since has filed a First Amended Complaint ("FAC").[1]

---

[1] The FAC asserted, in Count II, a claim of civil conspiracy pursuant to Va. Code § 18.2-499 et seq., but that claim was withdrawn by the plaintiff in a subsequent memorandum. See Pl.

DAC has asserted that Landrum is subject to personal jurisdiction in Virginia and that venue is proper in the Eastern District of Virginia. Landrum, a resident of California, asserts that he is not subject to personal jurisdiction in Virginia and that, in any event, the proper venue is California. For the reasons set below, Landrum's motions are denied.

## BACKGROUND

DAC, a business that sells commercial and residential locking systems, retained Landrum, a respected figure in the locking business, to consult for DAC on some installations. In March 2004, DAC became aware of a revolutionary new reprogrammable locking system manufactured by RIELDA in Italy, and subsequently sent examples of the RIELDA locks to Landrum and sought his opinion on the new technology. Like DAC, Landrum was also impressed with the new technology, and Landrum expressed a desire to help DAC secure an exclusive license to sell the locks in North America.

During the course of discussions between the parties, Landrum became interested in playing a more significant role in DAC so that he could act on DAC's behalf in securing clients and negotiating sales of the RIELDA locks. Therefore, DAC and Landrum reached an

---

Mem. in Opp'n to Mot. to Dismiss 14.  Therefore, plaintiff's motion to dismiss Count II (the charge of civil conspiracy) is granted. The request for treble damages pursuant to Virginia Code § 18.2-500, the damage provision for the Virginia civil conspiracy statute, is dismissed without prejudice.

agreement, pursuant to which Landrum would become the vice-president of research and development for DAC.  In return, Landrum was to receive a commission on sales that he initiated.  Landrum was also named as a director of DAC, owning a 5% share of the corporation, and he agreed to return to Richmond to attend board of directors meetings.  The agreement between DAC and Landrum contained a clause that provided that "[f]or purposes of construction of the law under this agreement, it shall be deemed made in and governed by the laws of the Commonwealth of Virginia." Compl. Ex. 1.  Landrum executed the contract in Richmond, Virginia while he was on a trip to the east coast on other business.

After becoming an officer and director of DAC, Landrum was very active in helping DAC in the RIELDA project.  Initially, Landrum and the chief executive officer of DAC traveled to Italy to negotiate a distributing license with RIELDA.  The trip was a success, and DAC received a contract to be RIELDA's exclusive dealer for North America.

Landrum suggested that DAC approach Hampton Products, Inc., a California company that sold security equipment.  With DAC's permission, Landrum brought samples of the RIELDA locks to Hampton Products which showed interest in selling the product and requested a trip to Italy to see the RIELDA facilities.

While in Italy, Hampton Products expressed its interests to RIELDA to be the exclusive dealer in North America for RIELDA and

requested a copy of DAC's agreement. Both DAC and RIELDA refused this proposal and RIELDA informed Hampton Products that DAC was its representative in North America. However, Landrum subsequently traveled to Italy to assist Hampton Products and RIELDA in forming a contractual relationship for distribution in North America by Hampton Products. Thereafter, RIELDA informed DAC that DAC would no longer represent RIELDA.

Landrum's motions to dismiss and to transfer venue will be considered against this background.

## DISCUSSION

**A. Rule 12(b)(2) Motion To Dismiss**

   **1. Applicable Law: Personal Jurisdiction**

Landrum first requests that this action be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). The plaintiff has the burden of proof to establish by a preponderance of the evidence. <u>Reynolds Metals Co. v. FMALI, Inc.</u>, F. Supp. 1496, 1497-98 (E.D. Va. 1994). It is generally the rule that, when no evidentiary hearing has been held, all facts in dispute must be viewed in the light most favorable to the plaintiff. <u>See</u> <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003) (internal citations omitted). However, the parties have submitted affidavits and have advised the Court that, if an evidentiary hearing were held, the witnesses would testify in accord with the affidavits. Therefore, the record is the same as

4

if an evidentiary hearing had been held. Thus, the motion here is governed by the principle that "[i]f the court holds an evidentiary hearing. . . the party asserting jurisdiction must demonstrate its existence by a preponderance of the evidence." 2 Moore's Fed. Prac. 3d § 12.31[5].

To meet its burden, DAC must establish that Landrum's actions qualify him for jurisdiction within Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1 (2000) and that the exercise of personal jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. See id. at 1498. Although this dual-pronged inquiry represents the traditional analysis, the Supreme Court of Virginia has held that the Commonwealth's long-arm statute extends personal jurisdiction to the full extent permitted by due process. See Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004); FMALI, 862 F. Supp. at 1498. Accordingly, the only decision required is whether exercising personal jurisdiction would offend the defendant's right to due process.

In order for a district court to exercise jurisdiction over a defendant, while comporting with the requirements of due process, it must be shown that the defendant must have had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Mitrano, 377 F.3d at 406 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Personal jurisdiction

exists in two variants, namely "specific jurisdiction," which requires that the controversy in the action "arises out of" sufficient contacts with forum state, and "general jurisdiction," which requires that the defendant has engaged in sufficient "continuous and systematic" contacts with the forum state to allow the courts to exercise personal jurisdiction over the defendant under any circumstance. See Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414-15 (1984). In determining whether specific jurisdiction exists in a given case, the district court must "consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (internal citations omitted). Anticipation of being haled into court within a given state is critical to this evaluation, and justification of an exercise of jurisdiction must rest upon a defendant's actions that were "directed at the forum state in more than a random, fortuitous, or attenuated way." Mitrano, 377 F.3d at 407.

To establish general personal jurisdiction over a nonresident defendant, the contacts enjoyed by the defendant must be both "continuous and systematic," ALS Scan, 293 F.3d at 712. That

6

determination is not necessary in this case. Therefore, the analysis of personal jurisdiction will proceed under the specific jurisdiction rubric.

### 2. Personal Jurisdiction Law Applied

Specific jurisdiction finds its "essential foundation" in a "relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). Critical to this evaluation are the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985). Thus, in this case, the analysis begins with the employment contract between DAC and Landrum.

Burger King, which, at its core, was a contract dispute, presented issues similar to those presented here. Burger King, whose headquarters were in Florida, sued Rudzewicz, owner of a Michigan franchise, for failure to maintain regular payments under the franchise agreement and continuing to use Burger King's trademark after the contract was terminated. See id. at 466-69. The case was filed in Florida. The contract provided that the agreement had been made in Miami and was to be governed by Florida law. See id. at 465-66. Rudzewicz made a special appearance in Florida to contest the exercise of personal jurisdiction. Id. at 469. The Supreme Court, affirming the district court's finding of personal jurisdiction over the defendant, held that:

>     Because Rudzewicz established a substantial
>     and continuing relationship with Burger King's
>     Miami headquarters, received fair notice from
>     the contract documents and the course of
>     dealing that he might be subject to suit in
>     Florida, and has failed to demonstrate how
>     jurisdiction in that forum would otherwise be
>     fundamentally unfair, we conclude that the
>     District Court's exercise of jurisdiction
>     pursuant to [Florida's long-arm statute] did
>     not offend due process.

Id. at 487.

The record here compels a similar result.

### (i)  Relationship With Landrum In Richmond

Landrum executed the contract in Richmond and the contract clearly provided that it "shall be deemed made in and governed by the laws of the Commonwealth of Virginia." Compl. Ex. 1. That alone is sufficient to demonstrate that Landrum "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 474-75 (citing Hanson v. Denckla, 357 U.S. 235 253 (1958)).[2]

Additionally, the contract provided that Landrum must attend all board of directors meetings in Richmond twice a year, thereby creating further ties between Landrum and Virginia. In light of

---

[2] In Burger King, the Supreme Court recognized that the defendant had never physically entered Florida. Id. at 476. However, the Court explained that, if the defendant had entered Florida to sign the contract, "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." Id.

his commitment to return to the forum state of his own volition, it is difficult to conceive of an argument that requiring Landrum to return to the Commonwealth for purposes of defending himself at trial would be an unfairly burden upon him.

### (ii) Fair Notice

The defendant also "received fair notice from the contract documents and the course of dealing" that litigation was possible in Virginia. Burger King, 471 U.S. at 487. Landrum had many telephone calls and had other correspondence about, and as part of, his consulting relationship with DAC. Thus, there was extensive communication with a Virginia entity with which Landrum contracted in Virginia. Moreover, Landrum became an officer and director of DAC and he signed an employment contract that clearly provided notice that it was to be governed by and enforced under the laws of Virginia. Compl. Ex. 1. On this record, there is adequate notice that litigation in Virginia could be a consequence of any breach of the employment agreement or of any litigation relating to Landrum's obligations to DAC.

### (iii) Fundamental Fairness

Any exercise of personal jurisdiction must comport with "fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). The factors to be considered in assessing fairness include the burden on the defendant, the plaintiff's interest in obtaining convenient and effective relief, and the

9

forum state's interest in adjudicating the dispute. See <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

The Supreme Court in <u>Burger King</u> held that, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King</u>, 471 U.S. at 477. Landrum has not met the burden of providing compelling reasons why trying the case in Virginia would be unreasonable. Landrum willingly agreed to visit Virginia at least twice per year as part of the employment contract. He even saw fit to travel to Richmond in order to sign the very contract that created the relationship which is the basis for this dispute.[3]

For the foregoing reasons, the plaintiff has carried its burden to prove, by a preponderance of the evidence, that Landrum is amenable to the exercise of <u>in personam</u> jurisdiction. The motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be denied.

**B. The Motion To Dismiss For Improper Venue Under Fed. R. Civ. P. 12(b)(3)**

**1. Legal Foundations For Choosing Venue**

Landrum alternatively contends that the case should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3). In

---

[3] Landrum, by written instrument, became an officer and director of DAC. Landrum denied that he had been told of this provision.

this diversity action, venue is determined under 28 U.S.C. § 1391(a).

Section 1391(a)(1) provides that venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." Applying this test for venue, it is clear that a district in California could be an appropriate venue for the controversy, since Landrum, the lone defendant, resides therein. However, the first test for venue is not necessarily dispositive, provided that the second subsection allows venue in another district.

Section 1391(a)(2) supports a finding of venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The claims of breach of contract and breach of fiduciary duty are founded upon the employment contract signed in, formed under, and governed by Virginia and its laws, see Compl. Ex. 1. Further, substantial parts of the breaches of contract and the breach of duty which are the subject of this action occurred in the Eastern District of Virginia. "[I]n determining whether events or omissions are sufficiently 'substantial' to support venue, a court should 'not focus only on those matters that are in dispute or that directly led to the action,' but rather 'should review the entire sequence of events underlying the claim." Production Group Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 798 (E.D. Va. 2004) (citing Mitrano

v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) (internal citations omitted). As in Production Group Int'l, "those same business contacts provide a basis for venue as well as for personal jurisdiction." Id. at 799. Thus, this court properly enjoys venue in this case,[4] and the motion to dismiss for improper venue will be denied.

**C.   Section 1404(a) Motion For Transfer Of Venue**

**1.   Landrum's Request For Transfer To California**

Landrum also has moved to transfer the action to the Central District of California. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As explained in the previous section, the Central District of California would have been a viable option for venue, had DAC chosen to file therein. "District courts have discretion under § 1404(a) to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Byerson v. Equifax Information Services, LLC, __ F.3d

---

[4] The final provision of the venue statute, namely Section 1391(a)(3), provides venue in " judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Because venue is proper in two districts, an analysis of venue under Section 1391(a)(3) is not necessary.

_, _, 2006 WL 3761528, at *2 (E.D. Va. 2006) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964)). Landrum, as the movant, has the burden to show that transfer of venue is proper. <u>See</u> <u>id.</u> at __, 2006 WL 3761528, at *2.

As explained above, Landrum has satisfied the threshold requirement for a change of venue by showing that the claims might originally have been instituted in the requested forum. <u>Koh v. Microtek Int'l, Inc.</u>, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). Thus, it is necessary next to "consider and balance" several factors to decide whether transfer is warranted, including:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

<u>Samsung Elec. Co. v. Rambus, Inc.</u>, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005). While each of those factors is appropriately considered, "[t]he principal factors to consider... are plaintiff's choice of forum, witness convenience, access to sources of proof, party convenience, and the interest of justice." <u>Id.</u> at 716.

Because § 1404(a) provides no intrinsic guidance regarding the appropriate weight afforded to each of the factors above, a court's conclusion "necessarily must turn on the particular facts of each case." <u>Id.</u> (citing 15 Wright, Miller & Cooper, <u>Federal Practice</u>

and Procedure: Jurisdiction 2d § 3847 at 370). Ultimately, "the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Id. Landrum's Rule 12(b)(3) motion will be resolved according to these precepts.

### (i) Convenience Of The Parties

Landrum seeks transfer "for the convenience of the parties and witnesses" and "in the interest of justice." As the movant, Landrum has the burden to show a transfer is proper. Reynolds Metals Co. v. FMALI, Inc., 862 F. Supp. 1496, 1501 (E.D. Va. 1994).

### (ii) Plaintiff's Choice of Venue

The plaintiff's choice of venue is "typically entitled to substantial weight," Byerson, __ F.3d at __, 2006 WL 3761528, at *4, and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946). "Additionally, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum." Lockwood Bros., Inc., v. Arnold Speditions GmbH, 453 F. Supp. 2d 928, 935 (E.D. Va. 2006). Such deference is especially appropriate where, as here, plaintiffs do not choose a forum bearing little or no relation to the cause of action. See Byerson, __ F.3d at __, 2006 WL 3761528, at *4. Thus, Landrum must demonstrate "that the deference due

14

plaintiff's choice of venue is clearly outweighed by other factors." Reynolds Metals Co. v. FMALI, Inc., 862 F. Supp. 1496, 1501 (E.D. Va. 1994) (internal citations omitted).

Landrum contends that Hampton Product's involvement in the case, as well as his own interest in trying the case in his home district where his business records are maintained, are sufficient grounds to merit transfer. Those are not sufficient reasons for diminishing the usual weight to be given to plaintiff's choice of forum.

Landrum specifically contends that the convenience of his witnesses and the availability of compulsory process to call witnesses requires a transfer, but these arguments are not persuasive. A transfer of venue is not proper merely to shift the convenience of trial from the plaintiff. See Eastern Scientific Marketing, Inc. v. Tekna-Seal, Inc., 696 F. Supp. 173, 180 (E.D. Va. 1988).

Moreover, Landrum has offered no proof respecting the identity of proposed witnesses or what they would say. Conclusory statements respecting convenience are insufficient to carry Landrum's burden of proof. Reynolds Metals Co. v. IMALI, 862 F. Supp. at 1501. Nor is there any proof that document production or other discovery would be significantly more burdensome in this district than in California. Landrum simply has not carried his burden and thus the motion to transfer venue will be denied.

For the foregoing reasons, the balance of factors[5] indicates that this action should continue in the Eastern District of Virginia. Thus, the motion to dismiss for improper venue or alternatively to transfer to the Central District of California will be denied.

**CONCLUSION**

For the foregoing reasons, the MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA; MOTION TO DISMISS COUNT II OF THE FIRST AMENDED COMPLAINT FOR FAILURE TO ALLEGE CIVIL CONSPIRACY WITH PARTICULARITY AND MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT (Docket Nos. 4, 5, 6, 7) will be denied except the MOTION TO DISMISS COUNT II OF THE FIRST AMENDED COMPLAINT FOR FAILURE TO ALLEGE CIVIL CONSPIRACY WITH PARTICULARITY (Docket No. 6) will be granted.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: April 26, 2007

---

[5] Landrum has offered no proof that would permit analysis of the other factors that often are persistent to a transfer decision.

16